IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RONALD HASTINGS<br><br>    Plaintiff,<br><br>v.<br><br>E.D. BULLARD COMPANY;<br>CLEMCO INDUSTRIES CORPORATION<br>f/k/a CLEMCO SERVICES<br>CORPORATION;<br>EMPIRE ABRASIVE EQUIPMENT<br>COMPANY; EMPIRE ABRASIVE<br>EQUIPMENT CORPORATION; EMPIRE<br>ABRASIVE EQUIPMENT COMPANY,<br>L.P.; BIG THREE INDUSTRIES, INC.;<br>BOWTO, INC.;<br>3M COMPANY; SANSTORM, INC.;<br>BOB SCHMIDT, INC.; SCHMIDT<br>MANUFACTURING COMPANY,<br>INC; SPECIALTY SAND COMPANY; and<br>AIR LIQUIDE AMERICA, LP<br><br>    Defendants. | CIVIL ACTION NO._____ |

## PLAINTIFF'S ORIGNAL PETITION

COMES NOW, **Ronald Hastings**, Plaintiff in the above-styled cause, and for his Complaint against Defendants, states:

### I. PARTIES

1.  Ronald Hastings is a resident of Alexandria, Louisiana.

2.  Defendant, **E. D. Bullard Company, (Bullard herein)** is a foreign corporation organized under the laws of Delaware, with its corporate headquarters at 1898 Safety Way, Cynthiana, KY 41031-9303. It is or was doing business in the State of Texas and may be served

1

with process by serving its registered agent: C. T. Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201.

3. Defendant, **Clemco Industries Corporation f/k/a Clemco Services Corp., (Clemco herein)** is a foreign corporation organized under the laws of Nevada, with its corporate headquarters at One Cable Car Drive, Washington, MO 63090. Defendant is or was doing business in the State of Texas but Defendant does not maintain either a regular place of business or an agent for service of process in this State. Therefore, Defendant may be served with citation by serving the Texas Secretary of State under Article 17.045, with process forwarded to Clemco Industries Corporation's agent: Arnie Sallaberry at One Cable Car Drive, Washington, MO 63030.

4. Defendant, **Empire Abrasive Equipment Company (Empire Abrasive herein)**, is a Pennsylvania corporation which does or did business in the State of Texas. Defendant is or was doing business in the State of Texas but Defendant does not maintain a regular place of business or an agent for service of process in Texas. Therefore, Defendant may be served with citation by serving the Texas Secretary of State under Article 17.045, with process forwarded to Defendant's home office address, 2010 West Cabot Blvd., Langhorne, Pennsylvania 19047 and/or by serving Richard Wodfield, 1732 Springhouse Lane, Chester Springs, Pennsylvania 19424-1424, by certified mail.

5. Defendant, **Empire Abrasive Equipment Corporation (EAEC herein)**, is a Pennsylvania corporation with its principal place of business in Pennsylvania which does or did business in the State of Texas. Defendant is or was doing business in the State of Texas but does not maintain a regular place of business or an agent for service of process in Texas. Therefore, Defendant may be served with citation by serving the Texas Secretary of State under Article 17.045, with process forwarded to Defendant's home office address, 2010 West Cabot Blvd.,

Langhorne, Pennsylvania 19047 and/or by serving Richard Wodfield, 1732 Springhouse Lane, Chester Springs, Pennsylvania 19424-1424, by certified mail.

6. Defendant, **Empire Abrasive Equipment Company, L.P., (Empire L.P. herein)** is a foreign corporation organized under the laws of Pennsylvania with its corporate headquarters at 2101 Cabot Blvd. W., Langhorne, PA 19047. Defendant is or was doing business in the State of Texas but does not maintain a regular place of business or an agent for service of process in Texas. Therefore, Defendant may be served with citation by serving the Texas Secretary of State under Article 17.045, with process forwarded to Defendant's home office address, 2010 West Cabot Blvd., Langhorne, Pennsylvania 19047 and/or by serving Richard Wodfield, 1732 Springhouse Lane, Chester Springs, Pennsylvania 19424-1424, by certified mail.

7. Defendant, **3M Company (3M herein),** is a foreign corporation organized under the laws of Pennsylvania, with its corporate headquarters at 3M Center, Bldg. 224-5N-40, St. Paul, MN 55144. It is doing business in the State of Texas and may be served with citation at the offices of its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

8. Defendant, **Sanstorm, Inc., (Sanstorm herein)** is a foreign corporation organized under the laws of the State of Delaware, with its principal place of business at P.O. Box 3186, Houston, TX 77253. Defendant is or was doing business in the State of Texas and may be served with citation through its President: Carrol Kendrick, P.O. Box 3186, Houston, Texas 77253.

9. Defendant, **BIG THREE INDUSTRIES, INC. ("BIG THREE" herein),** is a Texas corporation and may be served with process through its registered agent for service of process: J. David Stanford, 2000 State National Plaza, El Paso, Texas 79901.

10. Defendant, **BOWTO, INC. - DELAWARE f/k/a Bowen Tools, Inc. (BOWTO herein)**, is a foreign corporation organized and existing under the laws of the State of Delaware. It is or was authorized to do business in the State of Texas and may be served with process under Article 17.045 through the Texas Secretary of State. The Texas Secretary of State is directed to serve: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

11. Defendant, **Bob Schmidt, Inc., (Bob Schmidt herein)** is a Texas corporation and may be served with citation by serving its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

12. Defendant, **Schmidt Manufacturing Company, Inc**., **(Schmidt Manufacturing herein)** is a Texas corporation organized and may be served with citation by serving its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

13. Defendant, **Specialty Sand Company**, **(Specialty Sand herein)** is a Texas Corporation, doing business in the State of Texas, and service of process may be had by serving its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

14. Defendant, **Air Liquide America LP**, **(Air Liquide herein)** Individually, and as Successor by Merger of Big Three Industries, Inc., d/b/a Sanstorm (Air Liquide/Sanstorm), is a foreign corporation that has done or is doing business in the State of Texas and may be served with process under Article 17.045 through the Texas Secretary of State. The Texas Secretary of State is directed to serve: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## II. JURISDICTION AND VENUE

15. Jurisdiction is proper in this Court because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

16. Venue is proper in this Court because a substantial amount of the conduct which serves as the basis for filing this suit occurred in the Southern District of Texas.

## III. SERVICE OF §90.004 MEDICAL REPORT

17. Plaintiff, Ronald Hastings, suffers from the occupational lung disease, silicosis, and severe respiratory impairment. Pursuant to §§ 90.004 and 90.006 of the Texas Civil Practice and Remedies Code, the report of pulmonologist, Dr. Steven Haber, containing Mr. Hasting's ILO classifications and pulmonary function tests, are attached hereto as Exhibit "A," and are hereby served upon all Defendants in this case.

## IV. FACTS

18. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

19. Ronald Hastings worked in sandblasting and painting from approximately 1994 until 2021. He performed this work for several employers, including Archie Wilkins, who owned Diamond Enterprises and A-Way Tank Services, and Rodney Johnson the owner of Elevated Tank Services, as well as Apache Construction. Much of Mr. Hastings' blasting work happened in Texas. Mr. Hastings blasted the interior and exterior of elevated and ground tanks over his career. He also performed clean-up of the abrasive sand used in the blasting operations. During his career, the blasting abrasive he used the most was silica sand. He also painted the surfaces he had blasted.

20. Mr. Hastings performed sandblasting in Texas at many different locations including Alice, Texas. While he spent much of his time working on blasting jobs in Texas, he also worked on blasting jobs in Louisiana and Mississippi. He had to stop working after he was diagnosed with silicosis in October 2021.

21. As a sandblaster, Mr. Hastings' job duties entailed working in areas containing respirable silica dust. His work and duties in these areas required Mr. Hastings to wear respiratory protective equipment to protect him from the silica dust. Mr. Hastings wore respiratory protective equipment during sandblasting operations using silica sand and during clean-up operations. Mr. Hastings' exposure to silica is related to his use of sandblasting machinery and equipment.

22. While employed as a sandblaster, Mr. Hastings was required to work and did work in an atmosphere of heavy respirable silica dust. Mr. Hastings sandblasted the interiors and exteriors of water towers and tanks. In this work, he used abrasive blasting material which, in some cases, consisted of pure crystalline silica. During the blasting process, this silica-containing abrasive was blasted at high pressure for purposes of cleaning and preparing the surface. This blasting process caused the silica-containing material to fracture into particles smaller than five microns in size. Consequently, this fractured silica became respirable, and Mr. Hastings inhaled it during the blasting process.

23. In October 2021, Ronald Hastings was diagnosed with pneumoconiosis and silicosis for which he now brings suit.

## V. PRODUCT IDENTIFICATION

24. Ronald Hastings brings suit against the Defendants because of the injury he suffered as a result of his exposure to respirable silica while he worked in sandblasting. The Defendants include the providers of the sand abrasive; the manufacturers of the respiratory

6

protective equipment; and the manufacturers of the blasting equipment. During his sandblasting career, Mr. Hastings used the following abrasives and equipment:

(1) E.D. Bullard air fed hood;

(2) Clemco Blasting Pot and/or Apollo hood;

(3) Empire Blasting Pot;

(4) 3M 8710 and 3M 8210 Respirators;

(5) Sanstorm/Big Three/Bowto/Air Liquide Blasting Pot;

(6) Bob Schmidt/Schmidt Manufacturing Blasting Pot; and

(7) Specialty Sand abrasive blasting sand.

### VI. Count 1- Product Liability- Sand Manufacturing/Distributing

25. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

26. The Defendant Specialty Sand, manufactured, processed, packaged, sold and/or distributed abrasive blasting material which contained crystalline silica. Such material, usually sand, is first mined through a dredging system, then pumped in a liquid slurry, and, thereafter, screened to remove impurities. Such sand is then dried and re-screened for size prior to packaging and/or sale to distributors and/or users of this abrasive blasting material. This material contained high levels of crystalline silica which is known to cause and did, in fact, cause the condition of silicosis in Plaintiff, Ronald Hastings. The evidence will show that these Defendant marketed abrasive blasting material containing crystalline silica, that this material was defectively designed, and that such defect or defects made these products unreasonably dangerous. It will further be shown that such defect or defects made the products unreasonably dangerous to those persons such as Mr. Hastings, who could reasonably be expected to use and rely upon these products and that such defect or defects were a producing cause of Mr. Hastings' occupational lung disease. The Defendants, Custom Abrasives,

Dependable Abrasives, and Specialty Sand, are, therefore, liable to Plaintiff under the doctrine of Strict Liability in Tort.

27. Alternatively, Mr. Hastings would show that the abrasive blasting material manufactured, packaged, processed and distributed by the Defendant, Specialty Sand, was defective and unreasonably dangerous due to Defendants' failure to give adequate and proper warnings and instructions with respect to the manner in which these products should be distributed and used. Defendants failed to inform third parties of the dangers present with respect to the distribution and use of these abrasive materials which, when used in blasting operations, would cause exposed individuals to inhale hazardous free-floating silica. The failure of the Defendant to give adequate warnings and instructions was a producing cause of Plaintiff's injuries and damages.

### VII. Count 2 – Negligent Design and Marketing – Sand Manufacturing/Distributing

28. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

29. The Defendant, Specialty Sand, was negligent in designing, manufacturing, processing, packaging, marketing, selling and/or distributing the abrasive blasting material used by Ronald Hastings. This negligence proximately caused Mr. Hastings' occupational lung disease. The Defendant is, therefore, liable to Plaintiff under the Doctrine of Negligence.

### VIII. Count 3 – Negligence – Sand

30. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

31. The Defendant, Specialty Sand was negligent including, but not limited to, the following particulars, each of which was a proximate cause of Ronald Hastings' occupational lung disease:

8

    a.    In failing to adequately warn Plaintiff, Ronald Hastings, of the hazards associated with the inhalation of silica and silica dust and, specifically, that he could contract silicosis by using their abrasive blasting material and/or that silica sand used in sandblasting could remain suspended in the air for days resulting in the inhalation of free silica during periods when sandblasters were not actually blasting;

    b.    In failing to inform ultimate users, such as Plaintiff, Ronald Hastings, that use of silica sand in abrasive blasting operations was inherently unsafe and that silica sand should not be used in abrasive blasting operations; and

    c.    In failing to remove said abrasive blasting products from the market when the Defendants knew or should have known of the hazards of exposure to silica and silica dust, including contracting incurable silicosis.

Each and all these acts and omissions, taken singularly or in combination, were a proximate cause of Mr. Hastings' occupational lung disease and the damages he sustained.

## IX. Count 4 – Implied Warranty – Sand

32.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

33.    Alternatively, the evidence will show the Defendant, Specialty Sand, designed, manufactured, processed, packaged, distributed and/or sold this abrasive blasting material in a defective condition and thereby breached an implied warranty of fitness and an implied warranty of merchantability. Such breach or breaches of such implied warranties by the Defendant herein was a proximate cause of the occupational lung disease contracted by Ronald Hastings and the damages he sustained.

## X. Count 5 – Product Liability – Respiratory Equipment

34.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

35.    Ronald Hastings, while working as a sandblaster, or in related capacities, used various dust masks, air-fed hoods, respirators and non-air-fed hoods which were supposed to provide a degree of protection from silica contained in abrasive blasting materials. These masks, hoods and respirators were designed, manufactured, marketed, distributed and/or sold by Defendants, Bullard, Clemco, and

3M, for use in an atmosphere containing silica dust. Plaintiff will show that such products were defectively designed, manufactured, processed, packaged, distributed, marketed and/or distributed, and such defects made these products unreasonably dangerous to persons such as Ronald Hastings who could reasonably be expected to use and rely upon these products. The acts and omissions for which these Defendants are liable include, but are not limited to, the following:

- a. these Defendants knew, or with the exercise of reasonable care should have known, that the respirators/hoods would not protect against silica dust, and, therefore, the respirators/hoods were in a defective, unreasonably dangerous condition;

- b. these Defendants failed to warn and/or adequately warn Plaintiff of such dangers that were posed by their defective and unreasonably dangerous respirators/hoods;

- c. these Defendants knew or it was reasonably foreseeable, that their respirators/hoods would be used by users or consumers such as Plaintiff, in the manner in which their respirators/hoods were used by Plaintiff;

- d. these Defendants failed to instruct Plaintiff in the proper use of their respirators/hoods to protect Plaintiff from harm, if, in truth, there was a way that their respirators/hoods could protect Plaintiff from such harm;

- e. these Defendants knew, or with the exercise of reasonable care should have known, that their respirators/hoods were designed in a manner where the respirators/hoods did not properly fit and could not be fitted properly to Plaintiff in the circumstances and under the conditions in which Plaintiff used the respirators/hoods; and

- f. these Defendants knew, or with the exercise of reasonable care, should have known that their respirators/hoods were ineffective in repelling silica dust and that when Plaintiff used such respirators that the respirators were unreasonably dangerous to those persons such as Plaintiff, Ronald Hastings who could reasonably be expected to use and rely upon such products and that such defect or defects were a producing cause of Ronald Hastings' occupational lung disease and the damages he sustained.

These Defendants are, therefore, liable under the Doctrine of Strict Liability in Tort.

### XI. Count 6 – Marketing – Respiratory Equipment

36. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

37. Alternatively, Plaintiff would respectfully show unto this Court and Jury that the products in question were unreasonably dangerous due to the failure of Defendants, Bullard, Clemco, and 3M, to give adequate and proper warnings with respect to the manner in which these products should be used. These Defendants knew or should have known that their products would be used in abrasive blasting operations and, therefore, these Defendants should have warned persons like Ronald Hastings of the hazards and risks associated with abrasive blasting including the danger of inhalation of respirable free silica. These Defendants failed to provide any such warnings or instructions regarding the risks associated with abrasive blasting products, including a warning that silica sand should not be utilized in abrasive blasting operations, and the failure to provide such warnings or instructions constitutes a marketing defect which was a producing cause of Mr. Hastings' occupational lung disease and the damages he sustained.

## XII. Count 7 – Negligence – Respiratory Equipment

38. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

39. Pleading further in the alternative, Plaintiff would respectfully show that the Defendants, Bullard, Clemco, and 3M, were negligent in the designing, manufacturing, assembling, fabricating, testing, inspecting, marketing and or distributing the products in question and that such negligence was a proximate cause of Ronald Hastings' occupational lung disease and the damages he sustained. These Defendants are, therefore, liable under the Doctrine of Negligence.

In addition to the above referenced acts and omissions, said Defendants' negligence included, but is not limited to the following:

    a.    failing to provide adequate warning and/or instruction with regard to the equipment;

    b.    failing to provide proper fitting instructions;

    c.    As to 3M, either ignoring the results of filtering and quality control tests performed by 3M and others, or failing to perform adequate filtering tests on said respirators before they were placed in the stream of commerce;

    d.    failing to properly design their respirators;

    e.    failing to adequately monitor and/or test or prescribe monitoring and/or tests for persons who handled or worked with its respirators;

    f.    failing to accompany its respirators with adequate warnings of their dangerous propensities;

    g.    as to 3M, knowing, or with the exercise of reasonable care, should have known that 3M's respirators contained a filter which was not adequate to repel silica dust or prevent Plaintiff from breathing silica dust;

    h.    as to 3M, failing to implement or enforce a valid quality control program to insure that 3M respirators were manufactured in compliance with federal certification regulations; and

    i.    as to 3M, failing to manufacture a respirator which complied with federal certification regulations causing the respirator to have defects resulting in failure to a degree that the respirator does not provide any respiratory protection and that the defect reduced protection and is not detectable by the user.

### XIII. COUNT 8 – NEGLIGENCE *PER SE* – 3M

40.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

41.    Plaintiff also pleads negligence *per se* and shows that the Defendant **3M** violated the following provisions of federal law and federal regulations: (1) 30 U.S.C. § 820 (f) & (h) by falsely representing that the 3M 8710 and 8715 was in compliance with federal certification regulations when the respirator failed to comply with these regulations, and (2) 30 C.F.R. part 11, including sections 11.33, 11.40, 11.41, 11.42, 11.43, 11.140-4, 11.140-5 and 11.140-9. Plaintiff would further show that these laws and regulations were intended to protect the class of persons working in mining and/or silica dust producing operations and that Plaintiff, Ronald Hastings, is within this class of persons. Accordingly, Defendant 3M is liable under the doctrine of negligence per se.

### XIV. COUNT 9 – BREACH OF WARRANTIES – CLEMCO

42. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

43. The Defendant, Clemco, designed, manufactured, assembled, fabricated and/or distributed the products in question in a defective condition and, therefore, breached an implied warranty of fitness and an implied warranty of merchantability, in addition to various express warranties. Such breach or breaches of implied and express warranties by the Defendant herein was a proximate cause of Ronald Hastings' occupational lung disease and the damages he sustained.

### XV. COUNT 10 - BREACH OF WARRANTY – 3M

44. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

45. Plaintiff would show that at all material times, 3M was a merchant who sold respirators and, as such, 3M impliedly warranted that said respirators were fit for a particular purpose, would be safe and not unreasonably dangerous for use by the general public, and 3M also warranted that said respirators would be merchantable. At all material times, 3M expressly warranted with respect to the 3M respirators used by Plaintiff during the term of his employment aforesaid, that "one size fits all faces", "one size fits most faces", and that the 3M 8710 NIOSH certified respirators were approved to be used in a silica environment and could protect the user in a silica environment, and 3M Company breached its express warranty aforesaid because these respirators were dangerous and unsafe for the users thereof in a silica environment, including Mr. Hastings. 3M breached its implied warranty of fitness for a particular purpose aforesaid and of merchantability aforesaid and said breaches caused or were the contributing causes of Plaintiff's silica related occupational lung disease.

46. 3M knew or should have known that its respirators would be purchased and used in environments containing silica dust particles. Further, 3M knew or should have known that its respirators would be purchased and used as a means of protecting Plaintiff from inhaling silica dust particles.

47. Ronald Hastings reasonably relied on 3M's judgment that the respirators were fit for use in Plaintiff's work environment.

48. 3M's respirators were not fit for use in Plaintiff's work environment because the respirators failed to protect Plaintiff from inhaling silica dust.

49. As a direct result of 3M's respirators being unfit for use in Plaintiff's work environment, Ronald Hastings was damaged in that he suffers from a silica related occupational lung disease.

### XVI. COUNT 11 - FRAUD – 3M

50. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

51. The evidence will show further that 3M knowingly made representations that the 3M 8710 was approved by the National Institute for Occupational Safety and Health ("NIOSH") and met the approval requirements pursuant to the statutory requirements embodied in 30 C.F.R. Part 11 of Federal Regulations. The evidence will show that despite making these representations and including such representations on all packaging and marketing literature, the evidence will show that this representation was untrue. The evidence will further show that the 3M 8710 failed to meet NIOSH certification requirements and specifications. The respirator was sold to the public with full knowledge by 3M that the respirator could not and did not meet the NIOSH approval regulations. Such conduct constituted false representations and concealments with the intent to induce Plaintiff's employer into purchasing the 3M 8710.

52.     The evidence will also show that the representations set forth in the preceding paragraphs concerned material facts. Plaintiff's employer would not have endeavored to purchase the 3M 8710 if the Plaintiff's employer had known that the mask did not meet or exceed government certification requirements. This representation was relied upon by Plaintiff's employer resulting in substantial injuries and damages to Plaintiff. In this connection, Plaintiff further alleges that the Defendant 3M purported to have and did have superior knowledge concerning the subject matter of the transaction described above, and Plaintiff and his employer justifiably relied on Defendant's superior knowledge. The above foregoing action taken by 3M constitutes fraud which proximately caused Ronald Hastings' injuries and damages.

53.     3M's aforestated conduct was done with conscious disregard for the safety of Plaintiff and others, justifying an award of punitive damages.

### XVII. COUNT 12 – PRODUCT LIABILITY -ABRASIVE BLASTING EQUIPMENT

54.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

55.     Upon trial of this case the evidence will also show that the Defendants, Clemco, Empire, EAEC, Empire, L.P., Sanstorm, Bob Schmidt/Schmidt, Bowto, Big Three, and Air Liquide manufactured abrasive blast cleaning equipment including blast pots, blast machines, nozzles, air hoses, compressors and/or other types of equipment used in the blasting and surface preparation process. Plaintiff would show that these products manufactured by the aforesaid Defendants were defectively designed and inefficient for abrasive blasting users. As a result of such defective designs these products were unreasonably dangerous and were a producing cause of the occupational lung disease suffered by Ronald Hastings. Plaintiff would show that the occupational lung disease suffered by Ronald Hastings was caused by such defect or defects in the design of this abrasive blasting equipment and that such defects were present at the time the Defendants, manufactured, fabricated

and/or distributed the products in question. It will further be shown that Ronald Hastings reasonably expected to use and rely upon such products and that such defect or defects were a producing cause of Mr. Hastings' occupational lung disease and the damages he sustained. These Defendants are, therefore, liable under the Doctrine of Strict Liability in Tort.

### XVIII. COUNT 13 – MARKETING – ABRASIVE BLASTING EQUIPMENT

56. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

57. Alternatively, Plaintiff would respectfully show unto this Court and Jury that the abrasive blasting products and equipment in question were unreasonably dangerous due to the failure of Defendants, Clemco, Empire, EAEC, Empire, L.P., Sanstorm, Bob Schmidt/Schmidt, Bowto, Big Three, and Air Liquide to give adequate and proper warnings and instructions with respect to the manner the products should be marketed, distributed and used, including a warning that silica sand should not be utilized in abrasive blasting operations. The Defendants knew or should have known that this equipment would be used with silica sand and that silica sand should not be utilized in abrasive blasting operations. The failure to give such adequate warnings and instructions was a producing cause of Plaintiff's resulting injuries and damages.

### XIX. COUNT 14 - FAILURE TO WARN – ABRASIVE BLASTING EQUIPMENT

58. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

59. Alternatively, Plaintiff would respectfully show unto this Court and Jury that the abrasive blasting products and machines in question were unreasonably dangerous due to the failure of Defendants, Clemco, Empire, EAEC, Empire, L.P., Sanstorm, Bob Schmidt/Schmidt, Bowto, Big Three and Air Liquide to give adequate and proper warnings and instructions with respect to the manner the products should be marketed, distributed and used. The Defendants knew or should have known that this equipment would be used in abrasive blasting operations and that users and operators

of this equipment would load this equipment with abrasive containing crystalline silica. These Defendants, therefore, should have warned ultimate users of the dangers of inhalation of respirable free silica loaded and contained in this blasting equipment. The failure to give such adequate warnings and instructions was a producing cause of Ronald Hastings' resulting injuries and damages.

### XX. COUNT 15 – NEGLIGENCE – ABRASIVE BLASTING EQUIPMENT

60. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

61. Pleading further, and in the alternative, Plaintiff, Ronald Hastings, would respectfully show that the Defendants, Clemco, Empire, EAEC, Empire, L.P., Sanstorm, Bob Schmidt/Schmidt, Bowto, Big Three, and Air Liquide were negligent in designing, manufacturing, assembling, fabricating, testing, inspecting, and/or distributing the products in question and that such negligence was a proximate cause of Plaintiff's resulting injuries and damages. These Defendants are, therefore, liable under the Doctrine of Negligence.

### XXI. COUNT 16 – BREACH OF WARRANTY- ABRASIVE BLASTING EQUIPMENT

62. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

63. Pleading further and in the alternative, Plaintiff, Ronald Hastings, would respectfully show that the Defendants, Clemco, Empire, EAEC, Empire, L.P., Sanstorm, Bob Schmidt/Schmidt, Bowto, Big Three, and Air Liquide designed, manufactured, assembled, fabricated and/or distributed the products in question in a defective condition and therefore breached an implied warranty of fitness and an implied warranty of merchantability, in addition to various express warranties. Such breach or breaches of implied and express warranties were a proximate cause of Mr. Hastings' injuries and damages he sustained.

## XXII. COUNT 17 – DAMAGES
### (Applicable to all causes of action)

64. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

65. Upon trial of this case, it will be shown that the occupational lung disease suffered by Ronald Hastings was a proximate and/or producing result of the Defendants' defectively designed and/or negligently manufactured products. Plaintiff, therefore, respectfully requests the Court and Jury to determine the amount of the loss Ronald Hastings has incurred in the past and will incur in the future. There are certain elements of damages, provided by law, that Plaintiff is entitled to have the Jury in this case separately consider in determining the sum of money for each element that will fairly and reasonably compensate the Plaintiff for the injuries and damages and losses incurred and to be incurred.

66. From the date of the injury made the basis of this suit until the time of trial of this case, those elements of damage to be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate the Plaintiff for each element is as follows:

   a. Plaintiff Ronald Hastings has suffered, now suffers and will continue to suffer great pain of body and anguish of mind throughout his lifetime;

   b. Plaintiff Ronald Hastings has incurred hospital and/or medical and/or pharmaceutical and/or other expenses and Plaintiff will continue to incur such expenses in the future due to medical care necessary to prolong his life;

   c. Plaintiff Ronald Hastings has suffered, now suffers and will continue to suffer physical and mental anguish in the future due to the disabling character of silicosis;

   d. Plaintiff Ronald Hastings has suffered, now suffers and will continue to suffer impairment in the future due to silicosis;

   e. Plaintiff Ronald Hastings suffers and will continue to suffer permanent disabilities and will be permanently disabled in the future due to the disabling character of his occupational lung disease;

  f. Plaintiff Ronald Hastings has suffered a shortened life expectancy due to the occupational lung disease silicosis; and

  g. Plaintiff Ronald Hastings has suffered and will continue to suffer loss of earnings and income due to his inability to work as a result of his occupational lung disease.

67. Because of all the above and foregoing, Plaintiff has been damaged and will be damaged in a sum greatly in excess of the minimum jurisdictional limits of this Court, for which sum Plaintiff now brings suit.

68. The acts and/or omissions by the above-named Defendants in Counts 1 through 17 above, directly caused, or directly contributed to cause, Plaintiff's silica-related occupational lung disease damages as set forth herein.

69. WHEREFORE, Plaintiff prays for judgment against Defendants under these Counts:

  a. in an amount of actual damages which is fair and reasonable under the circumstances and <u>in excess</u> of $75,000;

  b. costs of suit;

  c. pre-judgment and post judgment interest; and

  d. such other and further relief as this Court deems just and proper.

70. As a direct and proximate and/or producing result of the aforesaid acts of negligence, strict liability in tort, and/or breach of warranties by the Defendants, Plaintiff sues for damages as set forth above, for which Plaintiff seeks to recover from the Defendants.

71. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, that upon final trial and hearing hereof, Plaintiff have judgment against Defendants, jointly and severally, in a sum in excess of the minimum jurisdictional limits, together with interest on the judgment at the legal rate, prejudgment interest, costs of court and for such other and further relief, both in law and in equity, to which the Plaintiff may show himself justly entitled.

Respectfully submitted,

**MARTIN WALTON LAW FIRM**

*/s/Michael B. Martin*
Michael B. Martin
Texas Bar No.: 13094400
Kentucky Bar No. 96907
699 S. Friendswood Drive, Suite 107
Houston, Texas 77456-4580
(713) 773-2035
(832) 559-0878 (facsimile)
mmartin@martinwaltonlaw.com

Johnny Givens
Kentucky Bar No. 98938
GIVENS LAW FIRM, PLLC
240 Trace Colony Park Drive, Ste 100
Ridgeland, Mississippi  39157
Telephone:  (601) 300-2009
Facsimile:   (601) 651-3948
johnny@givens-law.com

James P. Bell, Jr.
Texas Bar No.: 02078020
Attorney at Law
2601 Morgan
Corpus Christi, Texas 78405
(361) 883-0601
(361) 884-7023 (Fax)

*Attorneys for Plaintiff*